UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD C. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-01669-TWP-MPB |
| ) | |
| PAUL A. TALBOT, MICHELLE LAFLOWERS[1], ) | |
| WEXFORD OF INDIANA, LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment, filed by Defendants Paul A. Talbot ("Dr. Talbot"), Michelle LaFlower ("Ms. LaFlower"), and Wexford of Indiana, LLC. ("Wexford"), (collectively "the Defendants"), (Dkt. 54). Also before the Court is a Motion for Clarification, (Dkt. 58), filed by the Plaintiff, Ronald C Johnson ("Mr. Johnson"). For the reasons explained in this Order, the Defendants' Motion is **granted** and Mr. Johnson's Motion for Clarification is **denied as moot**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the

---

[1] **The Clerk is directed** to correct the Defendant's name to "Michelle LaFlower".

adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary

judgment motion before them. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.   PROCEDURAL BACKGROUND

Mr. Johnson is an Indiana Department of Correction ("IDOC") inmate at Pendleton Correctional Facility ("PCF"). He filed this action on April 25, 2019, and the Court granted him leave to amend his complaint on September 19, 2019. (Dkt. 26.) In its Entry screening Mr. Johnson's Amended Complaint, the Court summarized his factual allegations:

> Mr. Johnson alleges that he has an inguinal hernia and that Dr. Talbot and Ms. LaFlower[] have refused to treat his hernia. He allegedly experiences pain on a daily basis as a result of the denial of treatment. Additionally, he has had a 'continuing protrusion of the Inguinal Hernia since December 17, 2018.' He claims that Wexford has developed a common practice and procedure of failing to treat serious medical needs by continuing to employ Dr. Talbot and by failing to provide proper medical treatment to Mr. Johnson and other inmates at Pendleton.

*Id.* at 2. Mr. Johnson's Eighth Amendment deliberate indifference to a serious medical need claims proceed against Dr. Talbot and Ms. LaFlower, and his policy claim proceeds against Wexford. *Id.*

Mr. Johnson filed his Response opposing Defendants' Motion for Summary Judgment on August 28, 2020, (Dkts. 59-60), and Defendants filed their Reply on September 10, 2020 (Dkt. 62). The Defendants' Motion for Summary Judgment is now fully briefed and ripe for this Court's resolution.

## III.   FACTUAL BACKGROUND

At all times relevant to his Amended Complaint, Mr. Johnson was an inmate at PCF. Mr. Johnson has maintained a job in the facility's law library for twenty years. Dkt. 56-3 at 13. Dr. Talbot is a physician licensed to practice in Indiana and was employed by Wexford at PCF at the

3

time of Mr. Johnson's claims. (Dkt. 56-1, ¶¶ 1-2.) Ms. LaFlower is a nurse licensed to practice in Indiana and was employed as the Health Services Administrator ("HSA") of PCF at the time of Mr. Johnson's claims. (Dkt. 56-2, ¶¶ 1-2.) The HSA is responsible for primarily administrative duties and does not have direct patient contact. *Id.*, ¶ 3. Ms. LaFlower "over saw the provision of medical services at the facility, served as a liaison between IDOC and medical staff, and also responded to grievances and informal requests of a medical nature" at PCF. *Id.*

**A.      Treatment Related to Dr. Talbot**

Mr. Johnson was diagnosed with an inguinal hernia on July 19, 2016, and testified that he had the hernia for approximately 8 years. (Dkt. 56-1, ¶ 4; Dkt. 56-4 at 1-2.) Dr. Talbot examined Mr. Johnson at this time and "noted a potential bulb but no mass visibly present with no tenderness." (Dkt 56-1.) Mr. Johnson reported that the hernia was "reducible with no urinary issue, no pain and he continued to work out[.]" *Id.* These factors indicated to Dr. Talbot that Mr. Johnson's condition was "not a significant or serious medical abnormality." *Id.* Dr. Talbot's assessment noted "s/r hernia without any actual hernia mass palpated," the treatment plan included "watchful waiting." (Dkt. 56-4 at 1.) After seeing a nurse practitioner at a chronic care visit, a hernia belt was ordered for Mr. Johnson on March 9, 2017. (Dkt. 56-1, ¶ 5; Dkt. 56-4 at 9-12.)

Dr. Talbot saw Mr. Johnson again on January 22, 2018, at a chronic care visit for hypertension. (Dkt. 56-1, ¶ 6; Dkt. 56-4 at 6-8.) During this visit, the parties did not discuss Mr. Johnson's hernia. *Id.* Dr. Talbot attested that if any significant abnormality or discomfort related to the hernia had been discussed, it would be noted in the medical record. *Id.*

Mr. Johnson saw a nurse practitioner on March 15, 2018, for his hernia and reported that his hernia belt was not working, but he was not wearing it at the time of the visit. (Dkt. 56-4 at 3.) The medical record notes that he could reduce the hernia by lying down and that Mr. Johnson "runs

and exercises" regularly. *Id.* Mr. Johnson was instructed to wear the hernia belt daily and to return for examination with his belt. *Id.* at 4. Approximately five months later, Mr. Johnson saw another nurse but not for a hernia. *Id.* at 26-29.

Dr. Talbot saw Mr. Johnson on December 13, 2018, and the medical record documented his complaint "is a right inguinal hernia but states that it [was] not present" that day. *Id.* at 23. The medical notes show that Mr. Johnson had a hernia belt but lost it a few years ago. *Id.* At this visit, Dr. Talbot noted that no hernia mass or mass effect was present, no interventions were needed, and education was done. *Id.* at 23-25; Dkt. 56-1, ¶ 9. Dr. Talbot made his determinations after performing an assessment with a nurse present, and he attested he was not able to identify any inguinal hernia. (Dkt. 56-1 at 3.) To specifically address Mr. Johnson's discomfort, Dr. Talbot prescribed Mobic 7.5 mg for three months. *Id.* Mr. Johnson's provider visits with Dr. Talbot on January 25 and February 20, 2019, were unrelated to a hernia. (Dkt. 56-4 at 17-22; Dkt. 56-1, ¶¶ 10-11.)

On August 15, 2019, Mr. Johnson saw a nurse practitioner for increased discomfort related to a hernia, and the medical notes indicated he reported the hernia was the size of a small orange, and that he could not run. (Dkt. 56-1, ¶ 12; Dkt. 56-4 at 14-16.) The nurse indicated that the hernia was not reducible and was the size Mr. Johnson described. (Dkt. 56-4 at 16.) The nurse requested a surgical correction or surgical consult for the hernia. *Id.*; Dkt. 56-1, ¶ 12. Three days later an addendum note was written in the medical record stating that the request for a hernia repair surgery "was given an alternative treatment plan" because Mr. Johnson's body mass index ("BMI") was 32, which categorized him as obese. (Dkt. 56-4 at 13.) It was recommended that Mr. Johnson first lose 30 pounds to reach a recommended BMI of 25 or less for surgery to be approved. *Id.* Dr. Talbot attested that "[i]t is common knowledge that obesity increases the risks associated with

5

hernia repair surgery, and also significantly increases the risk of a failed surgery, or recurrence of the hernia." (Dkt. 56-1, ¶ 13.) Further, Mr. Johnson's hernia was considered "non-emergent." *Id.*

Dr. Talbot saw Mr. Johnson for the last time on October 10, 2019, for an unrelated knee issue. (Dkt. 56-4 at 30-32; Dkt. 56-1, ¶ 14.) Mr. Johnson was seen by another physician in January 2020, who reordered the hernia belt and advised him to continue losing weight, because his weight remained the same as it was in October. (Dkt. 56-4 at 33-36; Dkt. 56-1, ¶ 15.)

### B.     Interactions Related to Ms. LaFlower

Ms. LaFlower reviewed Mr. Johnson's grievance records at PCF and attested that he filled out an informal grievance on December 13, 2018. (Dkt. 56-2, ¶ 4.) The grievance had "HSA" handwritten at the top. (Dkt. 56-5.) She received the grievance through the mail on January 11, 2019. *Id*. This informal grievance did not make a specific request for treatment:

> I was called to sick call on 12-13-2018 for an exam to check on the Inguinal Hernia Dr. Talbot informed me I have back in Feb. 2018. Talbot made a quick exam and informed me I do not have a Hernia and made a sarcastic remark about not having a Hernia and got up and left the sickcall area without any further discussion about my medical problem with the Hernia.

*Id.* Ms. LaFlower reviewed the medical records for Mr. Johnson's visit with Dr. Talbot, and based on the doctor's evaluation and notes that he was not able to confirm a hernia and did not recommend further treatment, she responded to the grievance to reiterate those findings. (Dkt. 56-2, ¶¶ 6-7.)

Ms. LaFlower, as HSA and a nurse, does not have legal authority to diagnose or order specific treatment; however, she is to ensure that patients have access to necessary care. *Id.,* ¶¶ 8-9. In this case, based on the informal grievance and the medical record, Ms. LaFlower testified that Mr. Johnson "had already been seen and evaluated by a physician who determined that no treatment was necessary at that time." *Id.*, ¶9. Her position as HSA did not require that she notify the Regional Medical Director of informal grievances she received from inmates but she did have

6

the "ability to discuss grievances or requests with staff on-site, … the Regional Manager, the Regional Director of Nursing, or the Regional Medical Director, if needed." *Id.*, ¶ 10.  She did not believe Mr. Johnson's informal grievance warranted such action. *Id.*  Mr. Johnson was not prohibited from seeking medical care if needed through healthcare request forms or through a request to an officer on his unit in the case of an emergency. *Id.*, ¶ 12.

### C. Wexford Policies and Practices

Dr. Talbot attested that Wexford does not maintain policies or practices that categorically deny hernia surgeries.  (Dkt. 56-1, ¶ 18.)  "If a hernia is reducible and is not causing a significant impact on normal activities or urinary/reproductive function," it is not considered a medical emergency that warrants immediate surgery. *Id.*, ¶ 19.  Surgery is "indicated" when the hernia is incarcerated, strangulated, or impacting urinary and digestive function, or if it prohibits someone from going to work. *Id.*  Dr. Talbot did not observe those degrees of severity during his treatment of Mr. Johnson. *Id.*

### D. Mr. Johnson's Surgery

The Court notes that Mr. Johnson filed a judicial notice of surgery on September 25, 2020, indicating that his inguinal hernia was repaired on September 17, 2020.  (Dkt. 64.)

## IV. DISCUSSION

The individual Defendants argue that they are entitled to summary judgment because Ms. LaFlower, a nurse, did not have authority to order Mr. Johnson's inguinal hernia surgery, and Dr. Talbot had "a few sporadic visits" with him and was not deliberately indifferent to his medical conditions.  (Dkt. 54 at 2.)  The Defendants contend that Mr. Johnson is suing Wexford on an improper theory of *respondeat superior, id.,* and has not stated a policy or practice claim against Wexford.

A.      **Deliberate Indifference Standard and Claims**

Mr. Johnson asserts an Eighth Amendment deliberate indifference claim against the Defendants. At all times relevant to his claims, he was a convicted offender. This means that the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011).

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The "subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Mr. Johnson does not have a constitutional right to demand specific treatment. *Arnett,* 658 F.3d at 754 ("[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible…." Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm.").

"A medical professional is entitled to a deference in treatment decisions unless no minimally competent professional would have [recommended the same] under the circumstances." *Pyles*, 771 F.3d at 409. "Disagreement between a prisoner and his doctor, or even between two

medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (internal citation omitted).

The Defendants do not appear to dispute that Mr. Johnson's condition was an objectively serious medical need. (Dkt. 55 at 15.) Rather they dispute whether Dr. Talbot and Ms. LaFlower were deliberately indifferent. *Id.* at 15-21. Therefore, the Court directs its analysis to whether or not the Defendants knew of a substantial risk to Mr. Johnson and disregarded such risk.

### 1. Dr. Talbot

Mr. Johnson testified that since he initially saw Dr. Talbot in 2016, his hernia had progressively worsened and had gotten larger in size. (Dkt. 56-3 at 15-16.) He stated that he had "been fighting with [Dr. Talbot] since 2016 to try to get sent to see an off-site surgeon," but Dr. Talbot denied these requests. *Id.* at 16.

Mr. Johnson's chief complaint in this action is that he was not seen by an outside provider for surgical intervention. However, he is not entitled to demand specific care. As evidenced in Mr. Johnson's testimony, he had a hernia for eight or more years and for much of the time he was able to continue to work a job at the facility, exercise, and reduce his hernia. On at least one occasion when Dr. Talbot saw Mr. Johnson for his hernia, no hernia mass was noted. Dr. Talbot prescribed a hernia belt and Mobic to address Mr. Johnson's discomfort. Dr. Talbot's medical assessment of Mr. Johnson was that his hernia was not incarcerated or strangulated, nor did it otherwise significantly affect his daily activities or urinary or digestive functioning to warrant surgery.

Dr. Talbot's course of treatment was supported by other medical staff who did not drastically deviate from his treatment planning. Even when a nurse practitioner sought consult for a surgery or a referral in August 2019, other facility medical staff determined that surgery was not

9

warranted and recommended the alternative treatment plan that Mr. Johnson first lower his BMI to reduce his risk for surgical intervention and decrease pressure on the hernia.  Mr. Johnson's own testimony indicated that another physician, Dr. Buckley, who saw him in early 2020, after his interactions with Dr. Talbot, told him "there's no surgical intervention" and recommended that he find a tight pair of underwear to retain his hernia.  *Id.* at 52-53.  Dr. Buckley reordered a hernia belt and continued to advise Mr. Johnson to lose weight.  (Dkt. 56-1, ¶ 15.)

"The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment."  *Pyles*, 771 F.3d at 409 (where prisoner wanted different treatment because his medications were not helping, his disagreement with the physician did not allow him to prevail on his Eighth Amendment claim where the physician's choice of treatment was not blatantly inappropriate).  Mr. Johnson has not made such a showing.

Simply because Mr. Johnson testified that his condition was worse at the time of deposition than it was when he saw Dr. Talbot and that he eventually did see an outside provider for surgery, does not establish that Dr. Talbot was deliberately indifferent to his medical condition.  (Dkt. 56-3 at 56-57.)  The medical record and Mr. Johnson's interactions with Dr. Talbot between 2016 and 2018 support a finding that his hernia was not yet serious enough to require surgical intervention and that more conservative treatments were appropriate.  Mr. Johnson presents nothing to refute Dr. Talbot's medical judgment.  The Defendants argue that while, "it is clear that the Plaintiff would have preferred a referral to an off-site specialist at an earlier time and would prefer surgical correction", that is not the standard.  (Dkt. 62 at 3.)  The Court agrees.

10

Mr. Johnson argues in his response that Dr. Talbot did not give him instructions on symptoms to watch out for with the progression of his hernia and provided no follow up to show him how to wear the hernia belt. Mr. Johnson also contends that Dr. Talbot lied about Mr. Johnson not making complaints about his hernia or his having a hernia. But Mr. Johnson's brief does not point to any evidence that a genuine issue of material fact exists to survive summary judgment. (Dkt. 59; Dkt. 60; Dkt. 60-1.)

Because no reasonable juror could find that Dr. Talbot was deliberately indifferent to Mr. Johnson's medical needs, Dr. Talbot is entitled to summary judgment as a matter of law.

### 2. **Ms. LaFlower**

Mr. Johnson testified that he is suing Ms. LaFlower because she responded to his grievance against Dr. Talbot and did not investigate or intervene according to policy to resolve his issue of needing off-site treatment. (Dkt. 56-3 at 17.) Mr. Johnson believed that Ms. LaFlower should have contacted the Regional Medical Director about his condition and hernia surgery. *Id.* at 20. Mr. Johnson admitted that he understood that Ms. LaFlower, a nurse, could not diagnose him or order him to be seen by a surgeon, but that pursuant to IDOC policy 01-02-101, as the HSA she was required to notify the regional medical director of his request for medical care and his grievances. *Id.* at 22, 26, 31-33.

However, Ms. LaFlower appropriately addressed Mr. Johnson's grievance because she "reviewed the medical records, noted that Mr. Johnson had been seen by a physician, and provided feedback based upon [her] investigation." (Dkt. 56-2, ¶ 11.) Her response reiterated Dr. Talbot's findings from the December 2018 visit that no hernia was present during the examination and no interventions were necessary as a result. *Id.*, ¶ 7; Dkt. 56-4 at 23. Ms. LaFlower's response did

11

not prevent Mr. Johnson from seeking additional medical care if he had concerns or to submit additional healthcare requests for his condition. (Dkt. 56-2, ¶ 12.)

To the extent that Mr. Johnson believes that Ms. LaFlower did not follow IDOC policy as the HSA, his claim fails. "Section 1983 protects against 'constitutional violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). The Court has found no constitutional violation in Ms. Laflower's response to Mr. Johnson's grievance, and any failure to follow departmental regulation absent a constitutional violation is of no consequence here.

Because no reasonable juror could find that Ms. LaFlower was aware of a substantial risk to Mr. Johnson and disregarded that risk in deliberate indifference to his medical needs, she is entitled to summary judgment as a matter of law.

**B.** *Monell* **Claim**

Because Wexford acts under color of state law by contracting to perform a government function, *i.e.,* providing healthcare services to inmates, it is treated as a municipal entity for purposes of section 1983 claims. *See Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). "[M]unicipal governments cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees. They can, however, be held liable for unconstitutional municipal policies or customs." *Simpson v. Brown Cty.*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)). For Mr. Johnson to succeed on his policy claim, he must show that Wexford had a policy or custom that caused a constitutional injury. If there is no constitutional injury, there can be no policy claim. *See Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007).

"The critical question under *Monell* … is whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it), or if instead the harm resulted from the acts of the entity's agents." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (citing *Monell,* 436 U.S. 658 (1978) and *Los Angeles Cty. v. Humphries,* 562 U.S. 29 (2010)). "Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice." *Id*.

Mr. Johnson testified that he is suing Wexford because of its policies and procedures that deny inmates hernia operations. (Dkt. 56-3 at 41.) Mr. Johnson testified that Wexford did not have a policy but was required to follow the IDOC policies. However, he admitted that he did not think the IDOC policy was unconstitutional. *Id.* at 43. He clarified that his claim is that "the actions of the individuals" are unconstitutional because "they did not follow the hernia management guidelines." *Id.* He alleges Wexford is liable for the actions of its individual employees. *Id.* at 44. Mr. Johnson's own testimony described that Wexford monitored hernia cases on a case-by-case basis, risk was assessed, and if a hernia was to the point of strangulation, surgery or a referral may be required. *Id.* at 42.

In sum, Mr. Johnson cannot bring a claim against Wexford based upon a theory of vicarious liability, and Mr. Johnson has failed to point to identifiable policies or practices sufficient to support his *Monell* claim. Finally, the Court has found no constitutional injury, and where there is no such injury, there can be no policy claim. Accordingly, Wexford is entitled to summary judgment.

C.    **Retaliation Claim and Plaintiff's Motion for Clarification**

On August 13, 2020, Mr. Johnson filed a Motion for Clarification asking if he was allowed to proceed on his First Amendment claim. (Dkt. 58.) Mr. Johnson admitted that he was aware that the Court did not identify this claim in its Entry screening his Amended Complaint. *Id.*; *see*

Dkt. 26. Thus, he cannot present it now at summary judgment. However, Mr. Johnson argued his claim in his Response in opposition to the Defendants' dispositive motion, (Dkt. 59). Thus, his Motion for Clarification is **denied as moot.**

The Court notes that Mr. Johnson properly pled a First Amendment claim against Dr. Talbot and Ms. LaFlower in his original complaint, but the Court did not identify a retaliation claim in the Amended Complaint. (*See* Dkt. 2 (original complaint); Dkt. 9 (original screening); Dkt. 26 (Amended Complaint screening Entry); Dkt. 27 (Amended Complaint).) An amended complaint completely replaces the original complaint, and therefore, Mr. Johnson was required to include all of the claims he intended to pursue against all of the Defendants at that time. *See, e.g., Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). Further, "a party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *See Colbert v. City of Chi.*, 851 F.3d 649, 656 (7th Cir. 2017) (internal quotation omitted). In addition, any attempt to amend would be untimely, as the Court gave Mr. Johnson through December 27, 2019, to amend pleadings when it set a pretrial scheduling order in this case, and he did not do so within that timeframe. (Dkt. 33 at 3.)

Even if Mr. Johnson had timely raised a retaliation claim, this claim fails. "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Mr. Johnson contends that he engaged in use of the grievance process, a constitutionally protected activity, and the Defendants' responses to his grievances deprived him of medical treatment. (Dkt. 59 at 12-13.) Mr. Johnson references his

14

grievance filed on December 14, 2018. *Id.* As the Court has previously discussed, Ms. LaFlower's response to this grievance was based on her investigation of the medical records regarding Dr. Talbot's treatment provided on December 13, 2018. Ms. LaFlower's response to the grievance did not deny Mr. Johnson medical treatment, it merely reiterated the findings from his appointment with Dr. Talbot. Moreover, the grievance was filed *after* Dr. Talbot examined Mr. Johnson and there is no evidence that Dr. Talbot was aware of any other grievances Mr. Johnson filed. Mr. Johnson has presented no basis for a retaliation claim.

## V. CONCLUSION

For the reasons explained in this Order, the Defendants' Motion for Summary Judgment, Dkt. [54], is **GRANTED** and Mr. Johnson's Motion for Clarification, Dkt. [58], is **DENIED as moot**.

Final Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 3/24/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

RONALD C. JOHNSON, #24998
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

15